Case 6:24-cv-00019   Document 21   Filed on 06/04/25 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
June 05, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| SHAYNE BOLLMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:24-CV-00019 |
| | § | |
| WALMART INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Defendant Walmart Inc. ("Walmart") has filed a motion for summary judgment (Doc. No. 17).[1]  For the reasons discussed below, the district court should GRANT the motion.

### A. *Jurisdiction.*

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### B. *Proceedings.*

Plaintiff Shayne Bollman filed suit in the 135th Judicial District Court in Victoria County, Texas in May 2024, alleging that he slipped and fell at a Walmart store in Victoria. (Doc. No. 1-1.)  Plaintiff claims that he "slipped and fell on ice cubes spilled on the floor," causing personal injuries.  *Id.* at 5.  Plaintiff alleges negligence, gross negligence, and premises liability causes of action, as well as negligent hiring, training, supervision, and retention.  *Id.* at 5-7.  He seeks damages in excess of $1 million.  *Id.* at 10.  The underlying facts are discussed in greater detail below.  Walmart removed the suit to this Court on June 13, 2024, invoking the Court's diversity jurisdiction.  (Doc. No. 1.)

---

[1] This case has been referred to the undersigned for pretrial case management and recommendations on dispositive matters.  *See* Doc. No. 5; 28 U.S.C. § 636.

1 / 17

Walmart has now filed a motion for summary judgment. Plaintiff has responded, and Walmart has replied. (Doc. Nos. 17, 19, 20.)

### C. Claims.

This case arises from an October 2022 slip and fall at a Victoria Walmart store. In his state court petition, Plaintiff claims that he slipped and fell on ice cubes or melted ice that had been spilled on the floor. (Doc. No. 1-1, p. 5 ¶ 9.)

Plaintiffs has sued Walmart, claiming that Walmart and its employees "failed to use ordinary care by various acts [or] omissions and/or commissions" that proximately caused Plaintiff's injuries, including:

- Failing to monitor the condition of the floor in the premises;
- Failing to properly monitor the floor area;
- Failing to properly train its employees;
- Failing to warn others that a dangerous condition existed; and
- Creating a hazard to others.

*See* Doc. No. 1-1, pp. 5-6 ¶¶ 10, 11.

Plaintiff alleges that he was an invitee or licensee on Walmart's premises and that Walmart knew or should have known of the existence of an unreasonably dangerous condition on the floor, which posed an unreasonable risk of harm to Plaintiff. (Doc. No. 1-1, p. 6 ¶¶ 13, 14.) He also alleges gross negligence on Walmart's part under section 41.001(11) of the Texas Civil Practice and Remedies Code. *Id.* at 7 ¶ 15. Plaintiff further claims that Walmart "negligently hired, supervised, trained, and retained its employees," and that in the absence of such negligence Plaintiff's fall would not have occurred. *Id.* at 7 ¶¶ 16, 17.

### D. *Walmart's summary judgment motion.*

Walmart urges the grant of summary judgment in its favor, arguing that Plaintiff cannot supply evidence that Walmart had actual or constructive notice of the spill. (Doc. No. 17, pp. 7-13.) Walmart also argues that Plaintiff's negligence claims are precluded under Texas law because the premises liability cause of action is exclusive in this situation. *Id.* at 13-14 ¶¶ 33-35. Finally, Walmart contends that Plaintiff cannot provide the required clear and convincing evidence to support his gross negligence claim. *Id.* at 14-15 ¶¶ 36-38.

In response, Plaintiff states that this "is a premises liability case" and that the evidence shows that Walmart did have actual and constructive knowledge of the dangerous condition. (Doc. No. 19, pp. 1, 4-6.) Plaintiff does not specifically counter Walmart's arguments for summary judgment on the negligence and gross negligence claims. *See id.* Plaintiff instead argues that Walmart "knew of the dangerous condition as it was monitoring the area prior to and during Plaintiff's slip and fall." *Id.* at 5. Because Walmart's cameras are used for loss prevention and safety purposes, Plaintiff says, "there is a triable issue of material fact as to whether [Walmart] had actual knowledge of the dangerous condition prior to Plaintiff slipping and falling upon it." *Id.* Alternatively, Plaintiff argues that the surveillance footage indicates that the ice was on the floor for about three minutes and 19 seconds prior to Plaintiff's fall; because Walmart allegedly had employees stationed within 25 to 40 feet of the hazard, with "clear lines of sight," Plaintiff contends that a fact issue exists regarding whether the employees could or should have seen the spilled ice. *Id.* at 6. Moreover, Walmart's corporate emphasis that its employees "own spills" by monitoring and reacting to hazards "suggests [that Walmart] had ample time to form constructive notice of the dangerous condition." *Id.*

Replying, Walmart argues that Plaintiff fails to present sufficient evidence of actual notice, and that the mere existence of surveillance footage is insufficient. (Doc. No. 20, pp. 2-3 ¶¶ 1-4.) Nor, Walmart says, does Plaintiff provide evidence to indicate that any employee had a clear line of sight to the ice or that the spilled ice was actually visible to any Walmart employee. *Id.* at 3-6 ¶¶ 5-9.

### E. *The summary judgment evidence.*[2]

Walmart has submitted the following documentary evidence in support of its motion for summary judgment:

- Plaintiff's state court petition (Doc. No. 17-1);

- Plaintiff's deposition (without exhibits) (Doc. No. 17-2);

- An excerpt from the deposition of Garrett Nugent ("Nugent"), identified by Walmart as a manager[3] at the Victoria Walmart store where Plaintiff's fall occurred (Doc. No. 17-3);

- An excerpt from the deposition of Randolph Huynh ("Huynh"), identified by Walmart as a "digital coach"[4] (Doc. No. 17-4);

- An excerpt from the deposition of John Carlos Garcia ("Garcia"), a Walmart "asset protections operations coach" (Doc. No. 17-5);

- An affidavit from Garcia (Doc. No. 17-6); and

- Photographs of the area around the ice machine (Doc. No. 17-9).

Walmart has also submitted two soundless videos showing Plaintiff's slip and fall. (Doc. Nos. 17-7, 17-8.) Plaintiff has not objected to this summary judgment evidence.

---

[2] The facts discussed in this section are drawn from the competent summary judgment evidence. Only those facts relevant to the disposition of this motion are discussed. *See Gonzalez v. Herrman & Herrman, PLLC*, No. 2:22-cv-00282, 2024 WL 4119193, at *1 n.1 (S.D. Tex. Aug. 1, 2024) (Morales, J.), *aff'd*, 2025 WL 1233127 (5th Cir. Apr. 29, 2025) (citing *J.G. ex rel. Guajardo v. Bryan Indep. Sch. Dist.*, Civ. No. H-18-340, 2019 WL 3431274, at *3 (S.D. Tex. July 12, 2019) (Johnson, M.J.), *adopted*, 2019 WL 3430729 (S.D. Tex. July 30, 2019)).

[3] *See* Doc. No. 17, p. 7 ¶ 20.

[4] *See id.* ¶ 21.

Plaintiff has submitted the following evidence in support of his opposition to summary judgment:

- Walmart's incident report about Plaintiff's slip and fall (Doc. No. 19-1);
- An excerpt from Garcia's deposition (Doc. No. 19-2);
- Excerpts from Plaintiff's deposition (Doc. No. 19-3);
- Walmart's responses to Plaintiff's request for admissions (Doc. No. 19-4);
- Excerpts from Nugent's deposition (Doc. No. 19-5); and
- Excerpts from Huynh's deposition (Doc. No. 19-6).

Walmart has not objected to this summary judgment evidence.

Two Walmart store surveillance videos show Plaintiff's fall. The first is shot from above a closed self-checkout lane, and begins at 4:25 p.m. (Doc. No. 17-7.) A broad and highly polished concrete walkway is beyond the checkout lanes; the ice machine is visible to the right, on the other side of the walkway. To the left across the walkway is the door out of the store; a Walmart "greeter" is there. Although a black mat is visible on the floor in front of the ice machine, the view of the concrete walkway in front of the ice machine is obstructed by another checkout lane. As the video begins, a man pushes a shopping cart to the ice machine and begins loading bags of ice into the cart. Another man soon joins him and they load the cart together. The men load the cart quite high with ice (topping above the level of the deep cart) – so full that the second man goes and fetches a second cart to load more ice. The men continue loading ice into the carts; they load the second cart rather cavalierly, tossing or dropping bags of ice into the second cart.[5] The men finish loading the ice at 4:28 p.m. and push the laden carts out of the

---

[5] Garcia testified at his deposition that he could "see the actual ice come out from underneath the basket" as the men loaded the bags of ice into the cart. (Doc. No. 17-5, p. 6.)

store.  After the men leave, no uniformed Walmart employees pass by the area, and no employees can be seen looking directly at the area in front of the ice machine.  Several people walk past the ice machine or pass by on scooters; one even stops for a moment on the mat as she checks her cell phone.  Another customer walks over the mat on her way past.  No one is seen to slip.  Some ice cubes appear to be visible on the black mat, but not on the concrete walkway.

At 4:31 p.m., Plaintiff enters view, walking in front of the mat from right to left across the screen and pushing a cart.  As he passes the area in front of the ice machine, Plaintiff slips and falls, his cart propelling farther along the concrete walkway in front of him.  A Walmart employee who had been facing the other way backs into view and notices Plaintiff has fallen; she stops Plaintiff's rolling cart as customers come to Plaintiff's aid.  The video then ends.

The second video (Doc. No. 17-8) is shot from above the shiny broad concrete walkway, looking toward the door that the men used to exit when they took out the bags of ice.  From the perspective of Plaintiff's travel and fall, the camera is positioned high up and behind Plaintiff.  The ice machine is partly visible, and the black mat is visible.  In the video, the men are again seen loading ice into the two carts.  Customers come and go as they did in the first video.  One difference is visible between the second video and the first, however: in the second video, two customers are seen walking past the ice machine – after they pass the machine, one (the person who had walked closer to the ice machine) briefly checks the sole of her shoe but then keeps walking.  Plaintiff's fall occurs about 40 seconds later.  He is seen falling as he passes the ice machine, with his left foot (the foot farther from the ice machine) appearing to slip first.  The video depicts no apparent ice or water or track marks visible on the shiny concrete walkway or mat.

From the time the men leave with the ice, three minutes and 19 seconds elapse before Plaintiff's fall. (Doc. No. 17-6, p. 6 ¶ 17.)

In his deposition, Plaintiff stated that he was familiar with that particular Walmart store and that he had completed his shopping and was leaving the store to return home. (Doc. No. 17-2, p. 5.) He was wearing "Crocs" shoes. *Id.* at 6. The ice machine was located at the front of the store. *Id.* During checkout, Plaintiff had not been near the ice machine. *Id.* The flooring in that area was gray concrete, and the area was well-lit. *Id.* at 7. Nothing was blocking Plaintiff's view as he walked, he said, and he "wasn't concentrating on anything, just walking out of the store." *Id.* Plaintiff was pushing a cart as he walked out. *Id.* at 10.

Plaintiff described his fall: "All I recall is that my feet came out from underneath me, and my feet went forward and my body went backwards." (Doc. No. 17, p. 20.) He believed he was able to keep his head from hitting the floor. *Id.* Plaintiff did not hear any sounds (like ice crunching, for example) as he fell. *Id.* at 8. Plaintiff testified that he did not notice any ice cubes or water from melted ice. *Id.* After he fell, though, Plaintiff saw "water, melted ice cubes." *Id.* He testified that he did not see anyone drop ice cubes on the floor prior to his fall. *Id.* at 11. He did not know how long the ice had been on the floor prior to his fall. *Id.* at 12. Plaintiff did not recall seeing any cashiers in the area near the ice machine, nor did he see any "wet floor" signs or caution cones in the area. *Id.* at 11-12.

During his deposition, Plaintiff was shown video footage of his fall. In the first video shown to him, Plaintiff saw two men loading bags of ice from the machine into a shopping cart. (Doc. No. 17-2, pp. 25-26.) Plaintiff was unable to see for certain, on the video, any ice cubes or water on the floor. *Id.* at 27. He acknowledged that there were no cashiers stationed at the cash registers that were visible in the video. *Id.* Upon being shown a second video, Plaintiff

7 / 17

acknowledged that he could not see anything that looked like ice or water on the black mat in front of the ice machine. *Id.* at 36. He also acknowledged that other customers walked through the general area during the moments immediately before his fall, but that they did not slip (although one appeared to touch the sole of her shoe after walking past the ice machine). *Id.* at 37-38. Plaintiff acknowledged further that no Walmart employees walked past the ice machine from the time the men loaded the ice into the cart through the time of Plaintiff's fall. *Id.* at 41.

Garcia, in his affidavit, states that his review of the videos indicate that no ice was visible on the black mat or the concrete walkway prior to the men's loading of the ice into their carts. (Doc. No. 17-6, p. 4 ¶¶ 9-10.) After the men leave, though, one video shows "ice cubes … on the black carpet in front of the ice machine." *Id.* ¶ 11. A still photo taken from that video shows these cubes, Garcia says, but no ice or water is visible on the concrete walkway. *Id.* at 4-5 ¶ 12. In reviewing the videos, Garcia states that after the men left with the ice, store manager Nugent entered the camera's view as he walked out of the store but did not look toward the ice machine or the concrete walkway in front of it. *Id.* at 4 ¶ 13. No other store employees walked past or near the area of the ice machine, Garcia states. The greeter, he says, was approximately 40 feet away monitoring customers as they left the store, and another employee was monitoring self-checkout customers about 25 feet away. *Id.* at 6 ¶ 18. No cashiers were at the registers near the ice machine. *Id.* at 20.

Any further facts necessary to the disposition of the summary judgment motion are set forth in the discussion below.

### F. *Legal standard for summary judgment.*

"The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help 'secure the just, speedy and inexpensive determination of every

action.'" *Ellis v. Klawonn*, No. 4:21-CV-00977, 2023 WL 3993043, at *2 (E.D. Tex. June 8, 2023) (quoting *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012)).  Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  Courts must draw all justifiable inferences in favor of the party opposing the motion, and generally may not weigh the evidence or evaluate the credibility of witnesses.  *See id.*

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.  Additionally summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if

no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

A summary judgment non-movant faces a significant burden if the moving party demonstrates an absence of evidence supporting the non-movant's case. "A scintilla of evidence does not suffice to create a genuine issue for trial." *Mota v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 2:23-cv-00116, 2025 WL 868723, at *2 (S.D. Tex. Mar. 20, 2025) (Morales, J.) (citing *Anderson*, 477 U.S. at 251). Although a scintilla is something less than the amount of evidence necessary to support a reasonable finding of fact, the non-movant must do more "than simply show that there is some metaphysical doubt as to the material facts." *Id.* at *5 (citing *Matsushita*, 475 U.S. at 586).

Because this case is before the Court based on diversity jurisdiction, the Court must apply Texas substantive law and federal procedural law. *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985) (citing *Hanna v. Plumer,* 380 U.S. 460 (1965); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)).

## G. Discussion.

### 1. Premises liability.

To succeed on a premises liability claim under Texas law, a plaintiff must show that

> (1) the property owner had actual or constructive knowledge of the condition causing the injury; (2) the condition posed an unreasonable risk of harm; (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and (4) the property owner's failure to use reasonable

>care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Caballero v. Walgreens Co.*, No. 24-20512, 2025 WL 1555222, at *1 (5th Cir. June 2, 2025) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251-52 (Tex. 2014)).[6] Only the first issue is contested here: did Walmart actually or constructively know that the ice had spilled on the floor?

In a case like this one, alleging that a substance on a floor caused a slip and fall, a plaintiff satisfies the notice element by establishing that "(1) the defendant placed the substance on the floor, (2) the defendant actually knew that the substance was on the floor, or (3) it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002). A plaintiff may support his claim by relying on either direct or circumstantial evidence. *See Garcia v. Wal-Mart Stores Texas, L.L.C.*, 893 F.3d 278, 279 (5th Cir. 2018). Significantly, though, to create a fact issue, any circumstantial evidence must be sufficiently non-speculative. *Id.* at 281. And when a plaintiff relies upon circumstantial evidence to prove constructive notice, the evidence "must establish that it is more likely than not that the dangerous condition existed long enough to give the proprietor a reasonable opportunity to discover the condition." *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

Plaintiff does not allege that Walmart placed the ice on the floor. Likewise, there is no genuine fact issue whether Walmart had actual notice of the ice spillage before Plaintiff's fall. Actual knowledge is "what a person actually knows as distinguished from constructive or imputed knowledge; that is, what a person after a reasonable inspection ought to know or have reason to know." *Hall v. Sonic Drive-In of Angleton, Inc.*, 177 S.W.3d 636, 645 (Tex. App. –

---

[6] Plaintiff qualifies as an invitee on Walmart's premises because he entered the store as a shopper. *See Huffman v. Wal-Mart Stores Tex., LLC*, No. 3:23-CV-2302, 2024 WL 4112425, at *6 (N.D. Tex. Aug. 19, 2024).

Houston [1st Dist.] 2005). Although Plaintiff contends that the surveillance video captures the dropping of the ice onto the floor (Doc. No. 19, p. 5), there is no evidence that any Walmart employee actually saw this happen, either from the store floor or on the video as it was being recorded. While Plaintiff argues that Walmart employees had "clear lines of sight" to the ice machine (Doc. No. 19, p. 6), he fails to present any evidence that any Walmart employee ever actually looked or faced in the direction of the ice machine during that three-minute period. There is no direct evidence of actual notice from the video or from any of the deposition testimony; there is only Plaintiff's speculation that the hazard would have been visible, had someone only looked in that direction. Circumstantial evidence "is often used to infer constructive notice," but it "alone is insufficient to establish actual notice." *Tracy v. Wal-Mart Stores, LLC*, No. 3:23-cv-169, 2024 WL 3635528, at *3 n.* (S.D. Tex. June 26, 2024) (Brown, J.) (citing *Moreno v. Wal-Mart Stores Texas, LLC*, 506 F. Supp. 3d 503, 507 n.7 (S.D. Tex. 2020) (Miller, J.)). Plaintiff fails to demonstrate with evidence that Walmart or any of its employees actually knew that the ice cubes or melted ice was on the floor.

Thus, to defeat Walmart's summary judgment motion, Plaintiff's evidence must create a genuine fact issue of whether Walmart had constructive notice. A plaintiff seeking to establish such constructive knowledge must show that the "dangerous condition existed for some length of time," and that it was a "sufficient length of time that a reasonable owner/operator would have discovered the condition." *See Dorantes v. Costco Wholesale Corp.*, Civ. No. 23-1912, 2025 WL 1413405, at *2 (S.D. Tex. May 15, 2025) (Lake, J.) (quoting *Reece*, 81 S.W.3d at 815, and *Richardson v. Wal-Mart Stores, Inc.*, 963 S.W. 2d 162, 165 (Tex. App. – Texarkana 1988)).

How long is a "sufficient length of time?" Several factors are relevant, and what constitutes a reasonable time for discovery of the condition can vary depending on the particular

case. *See Pena v. Home Depot U.S.A., Inc.*, 32 F. Supp. 3d 792, 797 (S.D. Tex. 2013) (Hanen, J.). A plaintiff seeking to establish constructive knowledge could point to evidence such as employees' proximity to the condition, the conspicuousness of the condition, and the longevity of the condition. *See Moreno*, 506 F. Supp. 3d at 508. One factor to consider is the specific amount of time that the hazard was actually present: a plaintiff alleging constructive knowledge must show that the dangerous condition existed for some definite length of time. *See Reece*, 81 S.W.3d at 816.

      Here, considering in the light most favorable to Plaintiff, the uncontradicted evidence is that the ice was on the floor for three minutes and 19 seconds before Plaintiff slipped and fell. (Doc. No. 17-6, p. 6 ¶ 17.) There is no bright-line rule in this area, but some courts have found that such a short time "is insufficient to impart constructive knowledge." *Cf. Murray v. Chick-Fil-A, Inc.*, 626 F. App'x 515, 518 (5th Cir. 2015) (liquid on the floor existed for "a few minutes"); *Sturdivant v. Target Corp.*, 464 F. Supp. 2d 596, 603 (N.D. Tex. 2006) (five minutes). But there is no need to rely on any bright-line rule in this case, because the other factors also indicate that Walmart lacked constructive knowledge of the spill.

      First, the ice – whether still in cube form or melted – was not conspicuous. Although in one of the videos a few ice cubes can be seen on the black mat (Doc. No. 17-6, p. 5 ¶ 12 (still photos)), no cubes or water are visible on any part of the shiny gray concrete walkway where Plaintiff was walking when he fell. When shown the videos during his deposition, Plaintiff admitted that he too was unable to see whether there was any water, ice, or track marks on the shiny gray concrete walkway. (Doc. No. 17-2, pp. 26-27, 29-30, 36.) Plaintiff also testified that he did not see any ice or water on the floor before he fell. (Doc. No. 17-2, pp. 8-9.) Plaintiff has presented no evidence that anyone else saw water or ice on the floor prior to his fall, and the

parties have pointed to no evidence in the record about the size of any puddle of melted ice. Additionally, the light color of the shiny gray concrete walkway provides little contrast to clear water caused by melting ice. The district court should conclude that any dangerous condition on the floor was not conspicuous.

The district court should also conclude that the inconspicuous condition was not sufficiently near any Walmart employee to justify a finding of constructive notice. In his uncontradicted affidavit, Garcia states that after the men left with the ice, store manager Nugent entered the camera's view as he walked out of the store but did not look toward the ice machine or the concrete walkway in front of it. (Doc. No. 17-6, p. 4 ¶ 13.) No other store employees walked past or near the area of the ice machine, Garcia states. The greeter was approximately 40 feet away monitoring customers as they left the store, and another employee was monitoring self-checkout customers about 25 feet away. *Id.* at 6 ¶ 18. No cashiers were at the registers near the ice machine. *Id.* ¶ 20. The evidence of employees present 25 to 40 feet away is, at most, evidence that it might have been possible for Walmart to have discovered the condition, not that Walmart reasonably should have discovered it. *Cf. Reece*, 81 S.W.3d at 816 (employee five to eight feet away); *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (insufficient summary judgment evidence of constructive notice where hazard existed for at least 30 to 45 seconds and employee was standing within three to five feet from the condition).

The water or ice was on the floor for only three minutes and 19 seconds before Plaintiff fell. It was not conspicuous, and no Walmart employee was sufficiently near the water or ice to be charged with knowledge that it was there. The summary judgment record does not contain sufficient evidence to raise a genuine factual claim regarding any of the constructive knowledge factors. The district court should therefore grant summary judgment for Walmart on the

14 / 17

premises liability claim, because Plaintiff fails to produce a genuine issue of material fact on Walmart's knowledge of any dangerous condition.

Finally, the existence of a Walmart safety program does not dictate a different result or support a finding of constructive knowledge of the hazard in this case. Plaintiff argues that Walmart's emphasis on its employees' "owning the spill" and constantly monitoring for hazards supports a finding that Walmart "had ample time to form constructive notice of the dangerous condition." (Doc. No. 19, p. 6 (citing deposition testimony from Nugent and Huynh).) The existence of such a safety procedure is irrelevant to constructive notice, though: it impels employees to act when they notice a spill or other hazard. *See*, *e.g.*, Doc. No. 19-5, p. 6 (Nugent deposition: employees who notice a spill or something that could create a safety hazard are asked to react accordingly); Doc. No. 19-6, p. 6 (Huynh deposition: same). There is no evidence that any Walmart employee noticed the ice spill in this case, and no employee could be reasonably expected to "own" a spill that he or she had not seen. The existence of a safety policy does not tend to prove constructive notice of the particular spill in this case.[7]

### *2. Negligence.*

There is no genuine issue of material fact on Plaintiff's negligence claim, and Plaintiff does not appear to contest Walmart's summary judgment argument. A "person injured on another's property may have either a negligence claim or a premises liability claim against the property owner." *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016). The Texas Supreme Court has not eliminated all distinction between premises conditions and

---

[7] Also insufficient to show a genuine fact issue is Garcia's testimony that he had seen ice cubes drop from bags of ice taken from the ice machine in the past. (Doc. No. 19, p. 6 (citing Doc. No. 19-2, p. 12).) Plaintiff offers no evidence that any accidents ever occurred on those previous occasions or that Walmart had the opportunity to remedy the spill before Plaintiff's fall in this case.

negligent activities, *see Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016), but negligence claims require that a plaintiff's injury result from a contemporaneous activity, not from the property itself being unsafe. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Slip-and-fall cases like this one have consistently been treated as premises liability causes of action. *See Williams v. Quicktrip Corp.*, No. 3:24-CV-1861, 2025 WL 1334061, at *3 (N.D. Tex. May 7, 2025).

Here, Plaintiff alleges only that he was injured by a dangerous condition at the Walmart store – the spilled ice cubes or melted ice on the floor. He does not claim that there was any negligently conducted activity that was occurring. Plaintiff's claim is one for a condition of the premises and not any activity. The district court should therefore deem Plaintiff's negligence claim abandoned and should grant summary judgment for Walmart.[8]

### 3. *Gross negligence.*

Walmart seeks summary judgment on Plaintiffs' gross negligence claim. (Doc. No. 17, pp. 14-15, ¶¶ 36-38.) The district court should grant Walmart's motion because summary judgment for Walmart is appropriate on the underlying premises liability claim. *See Pinkerton v. Wal-Mart Stores, Inc.*, No. 3:19-CV-2660, 2020 WL 4339051, at *3 (N.D. Tex. July 28, 2020) ("Because Plaintiff cannot establish premises liability or ordinary negligence, she cannot proceed with the gross negligence claim.").

In any event, to prevail on the gross negligence claim, Plaintiff must show by clear and convincing evidence that Walmart's employees had "actual, subjective awareness" of the spill.

---

[8] The district court should likewise grant summary judgment for Walmart on Plaintiff's negligent hiring claim. Claims for negligent hiring "'fail where the plaintiff fails to allege a contemporaneous activity.'" *Shelton v. Wal-Mart Stores Texas, LLC*, No. 4:24-cv-1299, 2024 WL 3744402, at *2 (S.D. Tex. Aug. 8, 2024) (Ellison, J.) (quoting *Medina v. Costco Wholesale Corp.*, No. 4:23-CV-00129, 2024 WL 1122054, at *2 (N.D. Tex. Mar. 14, 2024)). No contemporaneous activity is alleged in this case.

*See Dorantes*, 2025 WL 1413405, at *4 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)).  Here, Plaintiff has not presented any such evidence, and indeed he has not briefed any opposition to Walmart's summary judgment motion on his gross negligence claim.  The district court should therefore deem the gross negligence claim abandoned and should grant summary judgment for Walmart.

### H. Conclusion and recommendation.

The district court should GRANT Walmart's motion for summary judgment (Doc. No. 17).

### I. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on June 4, 2025.

_____
MITCHEL NEUROCK
United States Magistrate Judge